

**Louisiana 22nd Judicial District Court,**
**Parish of St. Tammany**
**Minutes, 01/13/2021**

**State of Louisiana**
**vs.**
**WILSON, VANCE KEITH**

| | | | |
|---|---|---|---|
| **Case #:** | 3284-F-2020 | **Citation #:** | |
| **Hearing Type:** | Jury Trial | | |
| **Hearing Date:** | January 13, 2021 at 9:00 AM | **Location:** | Division E |
| **Heard by:** | Hon. William H. Burris | **Minute/Deputy Clerk:** | Angel Mouton |
| **Court Reporter:** | Kathleen Wells | **Court Interpreter:** | N/A |
| **Bailiff:** | Ross Cummings | **ADA:** | Iain A Dover |

---

**CHARGES:**

1. RESISTING A POLICE OFFICER WITH FORCE/VIOLENCE
June 22, 2020 (Felony) 14:108.2 (141082)
2. POSSESS SCHEDULE II SUBSTANCE W/OUT VALID PRESCRIPTION/ORDER IN <2G
June 22, 2020 (Felony) 40:967 (C)(1) (40967C1)

**APPEARANCES:**

VANCE WILSON, Defendant, present
State of Louisiana, State, present

DANIEL GINNETTY, Attorney, present

**PROCEEDINGS:**

- Defense made an oral motion to continue. Court denied said motion and requested defendant be drug screened as part of bond conditioning, Defense objected.

Arguments were heard on behalf of the Defense and State. Whereupon Court ordered the defendant be screened.

The State having made a plea offer to the defendant; defendant declined said offer.

Defense offered file and introduced into evidence the defendant's list of prescription drugs.

Court offered filed and introduced into evidence the Defendant s drug screen results. Court noted the Defendant has failed to comply with the conditions of his bond. Court revoked said bond and ordered the Defendant remanded into the custody of the St. Tammany Parish Sheriff s Office to post a new bond.

---

A TRUE EXTRACT OF THE MINUTES OF THIS COURT

*Lauren Palacio*
DEPUTY CLERK
22ND JUDICIAL DISTRICT COURT
ST. TAMMANY PARISH, LOUISIANA

Lauren Palacio, **Deputy Clerk**

SUPREME COURT OF LOUISIANA

NUMBER: _____

STATE OF LOUISIANA,

*respondent*

*VERSUS*

VANCE WILSON,

*applicant-defendant.*

ORIGINAL APPLICATION FOR WRITS OF CERTIORARI OF REVIEW ON BEHALF OF
APPLICANT, VANCE WILSON

PRIORITY CONSIDERATION REQUESTED

NUMBER 2021 KW 0167 ON THE CRIMINAL DOCKET OF THE
FIRST CIRCUIT COURT OF APPEAL

NUMBERS 3284-F-2020 & 3285-M-2020 ON THE CRIMINAL DOCKET OF THE
22nd JUDICIAL DISTRICT COURT, PARISH OF ST. TAMMANY, LOUISIANA

HONORABLE WILLIAM H. BURRIS, PRESIDING

Respectfully Submitted,

**DANIEL GINNETTY**, Bar Roll No. 37001
22nd District Public Defender's Office
402 N. Jefferson Avenue
Covington, LA 70433
(985) 302-3729 phone
(985) 898-0102 fax
dginnetty@northshoredefenders.org
*Counsel for Vance Wilson, Applicant*

## TABLE OF CONTENTS

Writ Application Filing Sheet.................................................................................2

Criminal Priority Filing Sheet...............................................................................3

Statement of Jurisdiction.......................................................................................5

Writ Grant Considerations.....................................................................................5

Statement of the Case............................................................................................8

Assignments of Error...........................................................................................10

Summary of the Argument....................................................................................11

Law and Argument ...............................................................................................13

Prayer for Relief ..................................................................................................28

First Circuit Court of Appeal Denial of Writs......................................................29

## APPENDIX

Excerpted Order of Trial Court.............................................................................30

Vance Wilson 1-13-21 Minutes............................................................................34

Transcript.............................................................................................................35

Bills of Information..............................................................................................77

Vance Wilson 72HR Minutes...............................................................................79

Paul Darby 72HR Minutes...................................................................................80

Vance Wilson 3-15-21 Bond Hearing Minutes.....................................................81

Mr. Wilson's First Circuit Brief in Support of Application for Writs....................82

## STATEMENT OF JURISDICTION

Jurisdiction vests in this Honorable Court under and by virtue of the provisions of Article V, Section 5 of the Louisiana Constitution of 1974.

## WRIT GRANT CONSIDERATIONS

Since January 1, 2021, the district court has implemented an informal policy based on its interpretation of Code of Criminal Procedure article 320 to drug test every defendant in division E in St. Tammany Parish charged with a violation of the Uniform Controlled Dangerous Substances Law (UCDSL) on every trial docket unless the defendant pleads guilty, in which case the court does not order them to submit to a drug test. As a result of this policy, Mr. Wilson has been held without bond since January 13, 2021, even though he posted bond in June 2020 and there were no special conditions of his bond related to drug testing. The First Circuit declined to review the case. This Honorable Court should grant Mr. Wilson's writ application because it presents several Rule X considerations.

### (A)(2) Significant Unresolved Issues of Law

This case presents a significant legal question: to what extent pretrial defendants can rely on the express conditions of their bond, and what are the non-express conditions they implicitly consent to as general conditions of release. The question is unresolved because no appellate court has ever reviewed La. C.Cr.P. art. 320 or its predecessor La. C.Cr.P. art. 336 in light of a similar assertion of authority by a district court. Moreover, there are no rules or standards governing the court's policy except its own interpretation of article 320(D).

Notably, this application does not in any way question the constitutionality of pretrial drug testing programs established by article 320(E), whereby individuals may be drug tested upon arrest and, based on the results of that test, have drug testing added as a special condition of their release on bond. None of that is challenged in this case because Mr. Wilson was not ordered to complete a pretrial drug testing program and had no special conditions of bond. Nevertheless, the court ordered him to submit to a rapid-result drug test in court and revoked his $2,500.00 bond, which he had posted seven months prior, without considering any alternative sanctions.

<u>(A)(4) Erroneous Interpretation or Application of Constitution or Laws</u>

The district court's interpretation of article 320 is wrong based solely on the plain language of that article, which does not authorize drug testing every defendant charged with a UCDSL violation if they do not accept the State's plea offer on a trial setting. Therefore, this Court can altogether avoid the constitutional issues raised and decide this case by the plain language of article 320.

However, the district court's application of article 320(D) also violates constitutional rights to due process, privacy, and freedom from unreasonable search and seizure. The court's policy subjects an entire class of pre-trial defendants to a humiliating public search without any individualized suspicion. Mr. Wilson remains subjected to incarceration without bond despite his having had neither constructive nor actual notice that he might be drug tested as a condition of his bond. There is no Federal or State case that has every authorized anything like the district court's drug testing policy here, which, again, is distinct from the constitutionality of pretrial drug testing programs in general.

<u>(A)(5) Gross Departure from Proper Judicial Proceedings</u>

The district court's drug testing Mr. Wilson solely because he is charged with a UCDSL violation and did not accept the State's plea offer, without regard to the express conditions of his bond, and then holding him without bond for testing positive on a rapid-result drug test, violated perhaps the most basic expectation in law: that a person should have some notice of proscribed conduct and an ability to insist on the accuracy of the evidence against him before a court deprives him of his liberty. Thus, the court's policy violates basic notions of fairness.

The policy also impairs the attorney-client relationship. Going forward, prior to every trial setting counsel must explain the policy without the benefit of any written rules or established standards to all clients charged with drug offenses—although there is no basis in law for this policy to be limited only to them. They are told that regardless of whether drug testing was made a condition of the bond that they paid for, and no matter how long they have been at liberty on bond, they will be subjected to the indignity of an observed drug test at the courthouse and remanded to jail without bond if they test positive—although without any designated rules, counsel is unable to advise which substances will trigger this dire consequence or whether prescriptions will provide a defense. Moreover, there are no procedural safeguards to protect against the non-negligible risk of

false positives, which is elevated since the rapid result dip test that the district court employs only provides a presumptive reading within five minutes, and there is no established mechanism to request a confirmation.

The only thing counsel can advise his clients for certain is that if they plead guilty they will not be subjected to this treatment. The simple act of relaying this policy to a new client who likely already suspects that their public defender is working against them eviscerates client trust. Thus, the district court's interpretation of article 320(D) contravenes the most basic legal norms and expectations and significantly impairs an attorney's ability to effectively and zealously advocate for his or her clients.

**STATEMENT OF THE CASE**

On June 24, 2020, the Commissioner set Mr. Wilson's bond <u>without any special conditions</u> at $ 2,500.00 after his arrest for one count of resisting with force (R.S. § 14:108.2), one count of possession of a schedule II CDS less than 2 grams (R.S. § 40:967(C)(1)), possession of paraphernalia (R.S. §§ 40:1023(C) & 1025(A)(1)), and improper lane use (R.S. § 32:79). App. at 79. Mr. Wilson posted a commercial surety bond on June 27.

Mr. Wilson was present in court for every date after bonding out: arraignment on August 3, trial on October 12 and pretrial on December 16. He timely applied to be represented by the public defender's office and the court certified his indigency status.

On January 1, 2021, pursuant to the local rules of the 22nd Judicial District Court the Honorable William H. Burris, Division E, rotated from Washington Parish to St. Tammany Parish and assumed all open criminal cases that had previously been allotted to the Honorable August J. Hand, Division B.

Mr. Wilson was present on the morning of January 11 for trial but due to this Court's order concerning COVID-19 restrictions no jury venire was subpoenaed. Therefore, counsel submitted written motions to continue each of his cases that were not expected to resolve by plea agreement, including Mr. Wilson's case. App. at 73. At about 4:30 PM the court ordered counsel to instruct each of his clients whose cases were not resolving to return the next day pursuant to their weeklong trial subpoena. Mr. Wilson returned to court on January 12 and again sat in the hallway from approximately 9 AM until 4:30 PM when the court ordered counsel again to instruct his clients whose cases were not resolving to return the following day. App. at 73.

On Wednesday, January 13, Mr. Wilson again was present at 9 AM along with several other of counsel's clients. The court ordered, "<u>All those individuals on the docket who are present and are facing a charge under the Uniform Controlled Dangerous Substances law will be taking a drug test today.</u>" App. at 36. Every client in court that day was counsel's client, although the court indicated that it had drug screened all UCDSL clients with private counsel on the first day of the trial week. App. at 39-40. None of the individuals ordered to drug screen displayed any signs of intoxication or disruption in court.

The court directed its order first towards Mr. Paul Darby, citing Code of Criminal Procedure article 320(D) for the authority to drug test every defendant charged with a UCDSL

violation who was not pleading guilty. App. at 37-38. Counsel objected to this order in Mr. Darby's case based on the plain language of article 320(D), app. at 38-9, 41, 43, 45-7, and because the court's interpretation of article 320(D) violated constitutional rights to due process, app. at 39, 43, and to be free from unreasonable search and seizure, app. at 55-6.

The court overruled counsel's objection and eventually directed the same order to Mr. Wilson, also solely because he was charged with a UCDSL violation. App. at 57. Mr. Wilson did not show any signs of intoxication and in no way disrupted court order. App. at 73. Bailiffs then seized Mr. Wilson and the other affected defendants and escorted them to the misdemeanor probation office in the courthouse. There they were commanded to urinate in a specimen cup under observation and a Reditest Panel Dip Screening Device was dipped into the cup. After waiting five minutes, the bailiff wrote down whether each of the panels indicated one or two lines, positive or negative.

Each of the defendants was escorted back to the courtroom and the bailiff handed the Reditest Panel Dip Devices and note sheets to the court. The court then granted Mr. Darby's motion to continue because "his drug test has come back negative on all accounts," app. at 61, and requested that the State put Mr. Darby's plea offer and speculated maximum habitual offender liability on the record. App. at 62-63. The court then informed Mr. Wilson that "his pretrial drug test as authorized by the statute previously indicated, came back positive for amphetamines, methamphetamines, marijuana, oxys, and buprenorphines," revoked his bond, and remanded him to jail without bond, "noting the standing objection made by Mr. Ginnetty at the beginning of the day today." App. at 65. The court then had the State put on the record Mr. Wilson's offer of seven years at hard labor as a second offender, the fact that the offer expired at the end of the day, and his speculated maximum habitual offender liability. App. at 65-6. The court introduced the Reditest drug test and note sheet into the record, app. at 60, but refused counsel's request to inquire about or introduce "documentation pertaining to the authenticity of the drug screens." App. at 74-75. Each of the other affected defendants pled guilty.

Mr. Wilson was handcuffed and detained in the holding cell adjacent to the courtroom. Counsel then argued that, pretermitting his objection to the lawfulness of the drug screen itself, the court should consider a lesser sanction than remand without bond. Counsel also introduced a pharmacy printout of prescriptions that Mr. Wilson's grandmother had provided to counsel during



the lunch recess after the court had remanded Mr. Wilson. App. at 67-70. The court disputed that it was holding Mr. Wilson without bond,[1] app. at 71, and refused to consider lesser sanctions, insisting that revocation of bond was required by law because of Mr. Wilson's positive drug test pursuant to article 320. App. at 73.

On January 21, counsel filed a motion to set bond which the court set for hearing on March 15. On that day, the court denied the motion and ordered that Mr. Wilson be held without bond. App. at 81. On February 12, Mr. Wilson timely sought expedited consideration for a writ of review from the First Circuit Court of Appeal, which that court denied without opinion on February 24, 2021. The State has not filed any motions in Mr. Wilson's case and did not file an opposition in the First Circuit. Mr. Wilson remains incarcerated in the St. Tammany Parish Jail without bond. His next court date will likely be a May 7 pre-trial setting. On March 25, 2021, counsel obtained a court order to view the Reditest Panel Dip Screening Device which the court submitted into evidence.

## ASSIGNMENTS OF ERROR

1. The district court erred by interpreting article 320(D) to authorize drug testing every defendant on a trial docket charged with a UCDSL violation and to mandate revocation of bond as the only possible sanction for a positive drug test.

2. The district court's application of 320(D) violates the State and Federal Constitutions:

    a. The district court's application of its interpretation of article 320(D) to Mr. Wilson violated his right to due process because it imposed a severe criminal penalty without any notice or basic procedural fairness.

    b. The district court's drug test policy violated Mr. Wilson's right to privacy and to be free from unreasonable search and seizure because it subjected him to the humiliation of a public seizure for an observed drug test without any individualized suspicion of criminal wrongdoing.

---

[1] "[I]t's a misstatement. He can move to set bond, or the State can move to set a new bond at any time. I'm not holding him without bond. I'm revoking his bond for failure to meet bond conditions." App. at 71.

## SUMMARY OF THE ARGUMENT

Mr. Wilson was at liberty on a $2,500.00 bond without any special conditions from June 27, 2020, until the court revoked his bond on January 13, 2021, due to the presumptive positive of a rapid-result drug test, which the court ordered solely because Mr. Wilson is charged with a violation of the UCDSL. This Court should reinstate Mr. Wilson's bond or release him without the requirement of posting additional security because the plain language of article 320(D), which the court cited for its sole authority, clearly does not authorize the court's policy of drug testing every defendant charged with a UCDSL violation on the trial docket unless they plead guilty.

The plain language of article 320(D) does not yield the authority that the court claimed. This becomes clear after interpreting subsection (D) narrowly according to the rule of lenity. In that light, the court's construction of subsection (D) is manifestly unreasonable. Moreover, legislative history demonstrates that subsection (D) was intended to authorize an initial drug screen upon arrest for the purpose of determining whether to mandate a pretrial drug testing program as a condition of bail. In light of that history and the otherwise unresolvable ambiguities in the plain language of subsection (D), the most reasonable conclusion is that subsection (D) does not apply outside of the context of the pretrial drug testing program authorized by subsection (E) and therefore cannot support the district court's drug testing policy, which is obviously not a pretrial drug testing program. Therefore, the court's order was unlawful either because the court's interpretation of 320(D) is manifestly unreasonable, or because there is a competing reasonable interpretation that is favorable to Mr. Wilson and therefore must be resolved in his favor.

This Court would not need to go any further than the plain language of article 320(D) to grant Mr. Wilson the relief he seeks. Nevertheless, the district court's drug test policy also clearly violates fundamental constitutional rights to due process, privacy, and freedom from unreasonable search and seizure. Mr. Wilson had no notice that he might be drug tested as a condition of bond because there were no special conditions set on his bond and the general conditions of bond listed in article 320(B) say nothing about drug testing. This omission is significant since the Legislature did include such general conditions for probation and parole, in article 895(C)(1) and revised statute 15:574.9, respectively. Thus, there is no basis for implied consent or constructive notice of drug testing as a general condition of bail. This makes sense too because the Commissioner does sometimes add drug testing as a *special* condition of bond under article 320(E), which he obviously

5

would not do if it were already a general condition of bail. In Mr. Wilson's case, of course, the Commissioner did not add any special conditions to his bond. Thus, Mr. Wilson is not claiming ignorance of the law; rather, even if he had pored over the entire criminal code and every single 22nd Judicial District Court rule, he would have found nothing to advise him that he might be drug tested on January 13 or, more importantly, that his bond could be revoked as a result.

The court's drug test policy is also fundamentally unfair and arbitrary. The actual drug test used here to revoke Mr. Wilson's bond was a Reditest Panel Dip Screening Device, a five-minute, rapid-result test <u>which the manufacturer's website advises is only "presumptive" and should be confirmed</u>. The court refused counsel's request to submit evidence pertaining to the test's reliability and only stated that the test was governed by regulations promulgated by this Court and the local rules of court, without citing specifically to any rules. Yet, there appear to be no public rules from this Court or the 22nd Judicial District Court governing the standards for revoking bond pursuant to a pretrial drug test. Furthermore, because it is a "dip test" there appears to be no way to request confirmation of the results, despite the manufacturer's advisement that the results are only presumptive and should be confirmed. Thus, the drug test policy violates due process for lack of notice, lack of formal process, and unreliability of testing—all of which are amplified by the severe criminal penalty imposed on a man who the day before had been at liberty on a $2,500.00 bond for seven months, had attended every court date, and had no special conditions on his pretrial release.

The court's order also violated Mr. Wilson's constitutional right to privacy and freedom from unreasonable search and seizure. The United States Supreme Court has long held that a drug test constitutes a search which must be justified by a warrant, an exception to the warrant requirement, or a re-classification of the search as administrative or special needs. Notably, there are no cases, Federal or State, that uphold any program remotely like the district court's drug test policy here. Here there was no warrant, no exception to the warrant requirement applies, and the harsh, criminal punishment imposed firmly removes the district court's drug test policy outside of the special needs or administrative search arena.

For all of these reasons, although this Court need not reach the question, the district court's interpretation of article 320(D) violated Mr. Wilson's constitutional rights to privacy and freedom

from unreasonable search and seizure and this Court should reinstate his bond or order that he be released without the necessity of posting bond.

## LAW AND ARGUMENT

1. The plain language of article 320(D) does not authorize drug testing every defendant on a trial docket charged with a UCDSL violation, nor does it mandate revocation of bond as a sanction for a positive drug test.

The plain language of Code of Criminal Procedure article 320(D) clearly does not authorize drug testing pre-trial defendants on a trial docket without regard to the express conditions of their bond; nor does it mandate or even authorize revocation of bond for a positive drug test. The district court's interpretation of article 320(D) to authorize such a policy is manifestly unreasonable for at least three reasons: (i) because if 320(D) pertains to post-arraignment drug testing then the district court's policy is illegally underinclusive since the article's mandatory language leaves no room for judicial discretion; (ii) because article 320(D) only authorizes a single drug test, which would be irrational if subsection (D) were meant to enable drug testing every defendant on every trial docket—but it is completely rational if it is meant to authorize a single drug test upon arrest to determine conditions of bond; (iii) because article 320(D) is ambiguous to the point of being meaningless as a freestanding provision since it does not designate substances to be tested for, establish procedures for testing, or even specify any consequence for a positive test.

Moreover, in 2016 the Legislature redesignated article 320(D) from former article 336(A) where it was expressly connected to a pretrial drug testing program—provided for in former article 336(B), current article 320(E)—but the redesignation unintentionally decoupled 320(D) from that context and rendered it meaningless as a standalone provision, although intelligible in concert with 320(E). Therefore, either because the court's interpretation of article 320(D) was manifestly unreasonable, or because there is a competing reasonable interpretation that is favorable to Mr. Wilson, this Court should either reinstate Mr. Wilson's original bond or order that he be released without the necessity of posting bond.

"It is a well-established tenet of statutory construction that criminal statutes are subject to strict construction under the rule of lenity . . . given narrow interpretation and any ambiguity in the substantive provisions of a statue as written is resolved in favor of the accused and against the State." *State v. Carr*, 99-2209, p.4 (La. 5/26/00), 761 So. 2d 1271, 1274. Article 320(D) is a criminal statute, and the district court imposed a harsh criminal sanction in applying its

interpretation of that article to Mr. Wilson. Therefore, article 320(D) must be strictly construed in light of the rule of lenity to determine whether, interpreted narrowly, it yields the authority which the district court claimed it for, and to consider whether there are any alternative resolutions of its ambiguities in favor of Mr. Wilson.

There is no narrow interpretation of article 320(D) that would authorize the district court's drug test policy. Article 320(D) states in full:

> Every person arrested for a violation of the Uniform Controlled Dangerous Substances Law or a crime of violence as provided in R.S. 14:2(B) shall be required to submit to a pretrial drug test for the presence of designated substances in accordance with the provisions of this Article and rules of court governing such testing. Every person arrested for any other felony may be required to submit to a pretrial drug test for the presence of designated substances in accordance with the provisions of this Article and rules of court governing such testing. Every person arrested for a misdemeanor may be required to submit to a pretrial drug test for the presence of designated substances in accordance with the provisions of this Article and rules of court governing such testing.

There are at least three parts of subsection (D) that count against the district court's interpretation. Firstly, if 320(D) pertains to post-arraignment drug testing then the district court's policy is illegally underinclusive since the article's mandatory language leaves no room for judicial discretion. Subsection (D) applies the mandatory "shall" both to individuals "arrested" for UCDSL violations *and* crimes of violence, but the district court only ordered that defendants charged with UCDSL violations be drug tested. App. at 36.   Thus, the court's policy is selectively underinclusive,[2] but the article on which it is putatively based leaves no room for judicial discretion. This contradicts the court's assertion that its policy merely executes the mandates of article 320(D). App. at 34.

More importantly, reading the plain language of subsection (D) demonstrates the impracticability, even impossibility, of executing article 320(D) according to the court's interpretation. If article 320(D) meant this then every court in this State would be bound to drug test every defendant charged with a UCDSL or crime of violence at every trial setting. Counsel is

---

[2] The court did not answer why it was not drug testing individuals charged with violent crimes despite reading the statute to mandate drug testing of individuals charged with a drug offense. In response to counsel's selective enforcement argument the court only explained why it was not drug testing defendants who pled guilty: "[T]he reason why I'm not doing it to those individuals who are accepting the plea deal that has been offered to them is simply of a financial concern. If they are taking a plea, and all of them so far have been offered suspended sentences of some nature, are going to be tested when the do check in with the Department of Probation and Parole. So I don't feel the necessity to pay for that through the court system if they are going to have it through probation and parole. Or if they're facing a jail sentence, they generally go through a drug screening at the jail as well. So there's no use in paying for two separate tests." App. at 40.

unaware of any court that does this, the reported cases indicate none, and even the district court here is not implementing article 320(D) as written in this manner. This is strong evidence that the district court's interpretation is wrong based on the plain language of subsection (D).

Secondly, construed narrowly article 320(D) only authorizes a single drug test—"shall be required to submit to *a* pretrial drug test"—which obviously does not authorize a court to drug test every defendant on every trial docket. Instead it sets up a bizarre situation where a court can hold its one drug test over a defendant throughout the course of his or her case, like a bee that can only sting once. This state of affairs would obviously be irrational, but it is the necessary result of reading article 320(D) narrowly according to the district court's interpretation; therefore, the irrationality of it strongly suggests that, contrary to that interpretation, subsection (D) does not grant district courts any special authority to drug test defendants on bail post-arraignment.

Since the court's policy has only been in effect since January, counsel does not know whether the court will drug test individuals charged with a UCDSL offense again; however, the court refused to consider whether any of the defendants had previously been subjected to a "pretrial drug test", as they likely would have been if the commissioner had added drug testing as a condition of their bond. Counsel made this argument for Mr. Darby because his bond had been conditioned on a pretrial drug testing program, unlike Mr. Wilson's, but the court refused to consider it. App. at 51. Of course, this would be a necessary inquiry if the statute meant what it says and authorized drug testing of defendants who have already posted bond. This provides further evidence that the district court's drug test policy is not supported by article 320(D).

Thirdly, and perhaps most importantly, the district court insisted that it relied on article 320(D) as a freestanding authorization to drug test defendants on bail regardless of the express conditions of their bond, app. at 51, however article 320(D) as a freestanding provision is rendered meaningless by inherent ambiguities and only makes sense in concert with 320(E) as mandating that people arrested for UCDSL violations and crimes of violence be drug tested in jail to determine whether their bond must be conditioned on completion of the pretrial drug testing program authorized by 320(E). Not only does this construction make good sense of the various ambiguities in subsection (D) but it also has the merit of matching the true historical evolution of subsection (D) from former article 336(A), where it was explicitly related to the pretrial drug testing program—former article 336(B), current article 320(E).

7

As a freestanding provision, subsection (D) yields at least three ambiguities: it does not designate substances to be tested for, establish procedures for drug testing, or even specify a punishment or consequence for a positive test. On the first point, subsection (D) merely authorizes "a pretrial drug test for the presence of <u>designated</u> substances," but does not itself designate any substances. The word "designated" at the very least counts against the district court's interpretation that would vest it with authority to drug test defendants for any substance whatsoever, or to use any drug testing device whatsoever regardless of its reliability. But the fact that subsection (D) nowhere actually designates any substances presents a problem for considering it as a standalone provision. By contrast, article 320(E)(2) expressly defines "designated" substances as "controlled dangerous substances" for the purpose of pretrial drug testing programs.[3] However, the rule of lenity does not permit importing a definition from another section of a statute to clarify an ambiguity that could otherwise be resolved in favor of the defendant. *See Carr*, 731 So.2d at 1274 fn. 5.

In its original context in article 336(A), this "designated" made sense because it referred expressly to the substances designated in 336(B), within the context of the pretrial drug testing program: "A person arrested for a state crime who tests positive for the presence of one or more <u>of the designated substances set forth in subparagraph (2) of Paragraph B of this Article.</u>" La. C.Cr.P. art. 336(A)(former law; eff. 6/23/93-12/31/16). Thus, as a standalone provision, which the district court insists that it must be, article 320(D) does not authorize any drug test at all because it does not designate which substances may be tested for.

The second ambiguity is that although it clearly authorizes "a pretrial drug test", subsection (D) does not specify any procedure for accomplishing that drug test except that it must be done "in accordance with the provisions of this Article and rules of court governing such testing." However there are no provisions of subsection (D) that govern testing nor are there any applicable rules of court.

The only provisions of the Article governing testing are found in subsection (E) and are the same procedural protections that the court took pains to distinguish as required by the pretrial

---

[3] (E)(2) authorizes a pretrial drug testing program that provides for "Drug testing to determine the presence of any controlled dangerous substance **identified in the Uniform Controlled Substances Law**," which phrase is absent from 320(D), "prior to the first court appearance and random testing thereafter to verify that the person is drug free." La. C.Cr.P. art. 320(E)(2).

drug testing program but not by its claimed authority to drug screen defendants on bail pursuant to its interpretation of subsection (D). Article 320(E) contains four subsections that mandate rules that a district must adopt if it chooses to establish a pretrial drug testing program, including "reasonable testing procedures to ensure the fair administration of the test and protection for the chain of custody for any evidence obtained." La. C.Cr.P. art. 320(E)(4). The court delineated subsection (D) from (E) for the simple reason that if subsection (D) were to be read in conjunction with subsection (E) then subsection (D) would only authorizes drug testing within the context a pretrial drug testing program, "prior to [the] first court appearance and random testing thereafter," La. C.Cr.P. art. 320(E)—in which case the court would be without any authority for its non-random, post-arraignment drug screen policy. In response to counsel's argument that the important procedural protections mandated by subsection (E) were lacking from its policy the court stated: "No, no, no, no. You are equating two separate things. Subparagraph E is the pretrial drug testing program. D is separate." App. at 51.

Likewise there are no "rules of court governing such testing." When counsel requested to be directed to any rules governing the court's drug testing, the court responded:

> The rules that I'm following are those that are established by the Supreme Court for the drug court programs that are mandated and done through the best practices published by the Supreme Court. We do that typically through our misdemeanor probation office, which follows all of the protocols and testing procedures mandated by the Louisiana Supreme Court . . . They will bring them to misdemeanor probation office, who will follow those protocols and procedures that our court has established.

App. at 41-42.

The court, however, was unable to cite to a specific rule or law except to suggest that counsel consult this Court's website. App. at 42. Neither the Rules for Louisiana District Courts[4] nor the appendix for the 22nd Judicial District Court[5] listed there provide any rules for pretrial drug testing. In the absence of any rules, the court employed a five-minute, rapid-result drug test, the Reditest Panel Dip Screening Device produced by Redwood Toxicology Laboratory, which the court also submitted into evidence. Notably, Redwood's website advertising this product advises: "Any positive result obtained with this urine screening test is presumptive and should be confirmed

---

[4] Available at https://www.lasc.org/rules/dist.ct/22ndJDCAppendices.PDF.
[5] Available at https://www.lasc.org/rules/dist.ct/22ndJDCAppendices.PDF.

by an alternate method such as GC/MS[6] or LC-MS/MS[7]." Redwood Toxicology Laboratory, https://www.redwoodtoxicology.com/devices/doa_panel-dip (last visited Mar. 26, 2021). However, Mr. Wilson's presumptive drug test was never confirmed by a more reliable method, and, because the specimen cup is presumably discarded and is not in the record, there does not appear to be any means to confirm the presumptive result. Redwood's website also notes that "[t]he U.S. Department of Transportation does not allow the use of rapid devices to conduct drug tests on regulated employees." *Id.* Therefore, the court's drug screen policy is not guided by any procedures or regulations which contravenes the requirement in subsection (D) that the drug screen be performed "in accordance with the provisions of this Article and rules of court governing such testing." As a result of the complete lack of standards, Mr. Wilson has been held without bond since January 13 solely because of an unreliable presumptive positive drug screen.

The final ambiguity is that subsection (D) as a standalone provision does not specify a consequence for a positive drug screen; certainly not revocation of bond. Therefore, the district court erred by insisting that a positive drug test pursuant to its interpretation of article 320(D) automatically resulted in revocation of bond by operation of law: "[Remanding Mr. Wilson] is not a sanction. I'm not sanctioning Mr. Wilson It's a revocation of bond condition, or bail conditions. So it happens by operation of law." App. at 71. The court also stated:

> I don't intend for any individual who does test positive to remand without bond. . .. I believe that the procedure that would be ***requisite*** is that they would be remanded, and they would have to post a new bond. And I would assume that the State, when you are revoked for failing your original bond conditions, the State is required to ask for an increase in that bond. And I'm required to grant an increase in that bond by law, of whatever amount I deem sufficient for the individual. So they would be remanded until the State requested the motion to increase,[8] and I was able to have a hearing with that individual and do my job according to the law.

---

[6] The same website defines this as "Gas Chromatography-mass spectrometry"  and describes it as "the gold standard in drug testing because it positively identifies the presence of a particular substance in a given sample. The GC/MS method is ideal for confirmation testing performed on a second independent portion of the original specimen." Redwood Toxicology Laboratory, https://www.redwoodtoxicology.com/devices/doa_panel-dip (last visited Mar. 26, 2021).
[7] The same website defines this as "Liquid chromatography-tandem mass spectrometry" and explains that it "combines the physical separation capabilities of liquid chromatography with the mass analysis capabilities of mass spectrometry." *Id. See also* Cathryn Jo Rosen, John S. Goldkamp, *The Constitutionality of Drug Testing at the Bail Stage*, 80 J. Crim. L. & Criminology 114, 125 (1989-1990) ("Professionals in the field generally recommend that screening test results be repeated (confirmed) on the more accurate gas chromatography/mass spectometry technology when positive test results can have serious implications for the person tested.").
[8] The State or the court on its own motion may increase bond for good cause, which "includes but is not limited to the rearrest of the defendant on offenses alleged to have been committed while out on a bail undertaking." La. C.Cr.P. art. 319. Of course, neither the State nor the Court can unconstitutionally search a defendant or his home to uncover evidence of new criminal conduct.

App. at 49 (emphasis added). Notably, the court did remand Mr. Wilson without setting a new bond, the state never filed a motion to increase, Mr. Wilson did file a motion to set bond which the court set for hearing nearly two months after it was filed, and at that hearing on March 15, 2021, ordered that Mr. Wilson be held without bond. Therefore, it is not incorrect to assert that the court ordered that Mr. Wilson be held without bond on January 13 solely due to the presumptive positive drug test.

Yet, there is clearly no language in subsection (D) authorizing remand without bond. The only part of article 320 that authorizes revoking bond is subsection (K), which states: "violation of any condition by the defendant shall be considered as a constructive contempt of court, and shall result in the revocation of bail . . . or remanding the defendant to custody. The court may also modify bail by either increasing the amount of bail or adding additional conditions of bail." La. C.Cr.P. art. 320(K)(emphasis added). Two things are notable about subsection (K): firstly, that it provides for the alternative sanction of increasing bail or adding conditions of bail, which the court refused to consider believing wrongly that remanding Mr. Wilson without bond was a necessary consequence under the law; secondly, that subsection (K) is only triggered by violation of "any condition," presumably of bail; however, as has been demonstrated Mr. Wilson did not violate any condition of his bail even pretermitting the question of whether the district court had the power to drug test him under subsection (D). Unlike Mr. Darby whose 72-hour hearing minutes reflect that the Commissioner "ordered no use or possession of any CDS unless prescribed," and "ordered the defendant to attend and successfully complete Bond Conditioning Court upon release," app. at 80, the Commissioner did not impose either of those conditions on Mr. Wilson's bond or any special conditions at all. The court acknowledged that Mr. Wilson had no special conditions imposed on his bond, but asserted incorrectly that he was bound by general conditions of bond pertaining to drug testing: "Although there's no order specifically for pretrial drug screening [for Mr. Wilson] these are standard conditions of bond for all bail. They are imposed by operation of law pursuant to the Code of Criminal Procedure Article 320." App. at 71.

However, there are no general conditions of bail related to controlled dangerous substances or implying a defendant's consent to drug testing as a condition of pretrial release. Article 320(B) is titled "conditions of bail generally," and states in full:

> The condition of the bail undertaking in district, juvenile, parish, and city courts shall be that the defendant will appear at all stages of the proceedings to answer the

<u>charge before the court in which he may be prosecuted, will submit himself to the</u> <u>orders and process of the court, and will not leave the state without written</u> <u>permission of the court.</u> The court may impose any additional conditions of release that are reasonably related to assuring the appearance of the defendant before the court and guarding the safety of any other individual or the community.

The omission of any general conditions of bail related to controlled substances or implying consent to drug testing is significant given that the Legislature did include such general conditions for probationers and parolees. *See* La.C.Cr.P. art. 895(C)(1); La. R.S. § 15:574.9. Notably, the court has imposed a far harsher penalty on Mr. Wilson, a pre-trial defendant, than the maximum penalty under law for a probationer or parolee who tests positive for drugs, which is fifteen days as a technical violation. *See* La. C.Cr.P. art. 900(A)(6)(d); La. R.S. § 15:574.9 Mr. Wilson, by contrast, has been held without bond since January 13.

Thus, Mr. Wilson did not violate any conditions of bail that could trigger subsection (K), the only subsection authorizing revocation of bond in article 320; and, furthermore, even if he had violated the conditions of his bail, subsection (K) does not mandate revocation of bond as the only possible consequence of a violation of "any condition." Therefore, the plain meaning of article 320 proves that the Court did not have authority to revoke Mr. Wilson's bond, nor was it required by law to revoke Mr. Wilson's bond. For all of these reasons, the district court's interpretation of article 320(D) is unreasonable based on the plain language of the article and this Court should reinstate Mr. Wilson's bond or order that he be released without the necessity of posting additional bond.

Apart from the fact that the district court wrongly interpreted the plain language of article 320(D), the relevant legislative history also demonstrates that subsection (D) is in fact intended to be bound up with the pretrial drug testing program authorized by subsection (E). Specifically, subsection (D) is most sensibly read to authorize or mandate drug testing certain classes of arrestees to determine based on the result of that drug test whether the pretrial drug testing program should be added as a condition of their bond.[9] In 2016, the Legislature repealed and redesignated parts of former article 336, which was titled "Release conditioned on participation in pretrial drug testing program", in current article 320, which is titled more broadly "Conditions of bail

_____

[9] This is also the interpretation counsel proposed at the hearing, "I would say that [article 320(D)] mandates a pretrial drug test, which in the context of the statute is obviously contemplated upon arrest, and at the jail, and to determine eligibility or requirement to complete bond condition court . . . which is what we call locally a pretrial drug testing program." App. at 51.

undertaking". 2016 La. ACT 613 | 2016 La. SB 123. Current article 320(D) derives directly from former article 336(A) (former; eff. 6/23/93-12/31/16) . Originally enacted in 1993, 1993 La. ACT 834, 1993 La. SB 992, former article 336(A) read in full:

> Every person arrested for a state crime may be required to submit to a pretrial drug test for the presence of designated substances in accordance with the provisions of this Article and rules of court governing such testing. A person arrested for a state crime who tests positive for the presence of one or more of the **designated substances** set forth in Subparagraph (2) of Paragraph B of this Article or any person arrested for a violation of R.S. 40:966(1) through 1036, if released by order of court on his personal surety, shall meet the requirements of Article 315 for a personal surety and shall, as a condition of bail, **be required to participate in a pretrial drug testing program**.

La. C.Cr.P. art. 336(A) (former; eff. 6/23/93-12/31/16) (emphasis added).

Therefore, in its original context, the language now incompletely redesignated in article 320(D) served the purpose of authorizing an initial drug screen upon arrest to determine mandatory participation in a pretrial drug testing program. This explains a good deal of the current ambiguity in 320(D), for example: the reference to "every person arrested for" a UCDSL or a crime of violence rather than every person "charged" with or some similar language that could expressly apply to defendants who have already posted bond; and the original content of the currently ambiguous phrase "designated subsstances", which was expressly connected in former article 336(A) to the substances expressly designated in former article 336(B), which authorized the pretrial drug testing program, redesignated as current article 320(E). Former article 336(A) also specified that the sole consequence of the authorized positive drug test was release conditioned on participation in the pretrial drug testing program, the opposite of the district court's unreasonable interpretation of the same language to authorize a drug test for the purpose of incarcerating someone who has already been released. It appears that the Legislature mistakenly decoupled 320(D) from 320(E) when it transposed the same language from 336(A) & (B); it does not appear that the Legislature ever intended the language in current article 320(D) as a freestanding authorization for district courts to drug test people who had already posted bond, without regard to the express conditions of their bond.

The legislature also repealed without redesignating former article 336(C), which stated : "If the person [released on the condition of participation in the pretrial drug testing program] fails to comply with the pretrial drug testing program rules, the court may hold him in contempt and impose sanctions the court deems appropriate, including the posting of additional bail." This is significant for a few reasons. Firstly, it shows that the Legislature has never mandated revocation



of a defendant's bond as a necessary consequence of a positive drug test, even when the person's bail has been expressly conditioned on drug testing, unlike Mr. Wilson's bail. The most that was ever authorized was for the court to increase bond or consider imposing lesser sanctions, both of which the court refused to do in Mr. Wilson's case.

Secondly, the deletion of this language creates an ambiguity in current law about whether it is even permissible to increase bond if a person in a pretrial drug testing program tests positive for drugs, as long as he or she complies with continued drug testing.[10] Indeed, to the best of counsel's knowledge this is how the 22nd Judicial District Bond Court operates: the penalty for a positive test is that the Commissioner orders more frequent drug testing but does not revoke the person's bond. In any case, that issue is not raised in Mr. Wilson's case because Mr. Wilson was not required to participate in a pretrial drug testing program; but the observation highlights the excessiveness of the court holding Mr. Wilson without bond due to a single presumptive-positive, rapid-result drug test ordered without any notice and contrary to the express conditions of his bond.

Therefore, even should this Court find the district court's interpretation of article 320(D) reasonable, despite its obvious clashes with the plain language of that subsection, there is also a competing reasonable interpretation of 320(D) that favors Mr. Wilson. According to the rule of lenity, article 320(D) must be interpretated in Mr. Wilson's favor, and this Court should reinstate his bond or order that he be released without the requirement of posting security.

II.     The district court's drug test policy violated Mr. Wilson's basic constitutional rights.

This Court need not reach the constitutional question to find that the district court's order was contrary to law; however, clearly the order also violated Mr. Wilson's constitutional rights to due process protected by the Fifth and Fourteenth Amendments to the United States Constitution, and Louisiana Constitution article I, section 2, and his rights to privacy and to be free from unreasonable searches protected by the Fourth and Fourteenth Amendments to the United States Constitution and Louisiana Constitution Article I, section 5.

---

[10] The only sanction authorized by current article 320(E) is continued "random testing verify that the person is drug free." La. C.Cr.P. art. 320(E)(2).

a.   The district court's application of its interpretation of article 320(D) to Mr. Wilson violated his right to due process because it imposed a severe criminal penalty without any notice or basic procedural fairness.

Due process requires that a person have fair notice of proscribed conduct and that an ambiguous statute not be arbitrarily enforced against him. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) ("[t]he touchstone of due process is protection of the individual against arbitrary action of the government."). In this case Mr. Wilson had neither constructive nor actual notice that he might be drug tested as a condition of his bond, and he is being held in jail without bond based on the district court's unreasonable construction of an ambiguous statute. Therefore, the district court's application of article 320(D) to Mr. Wilson violated his right to due process.

The district court claimed that Mr. Wilson had at least constructive notice that he might be drug tested, but this claim relied on the erroneous assumption that some general condition of bail authorized drug testing. The court said, "No notice is not a valid argument. It's a general condition of bond. It's in the law. Ignorance of the law is no excuse." App. at 54. However, as demonstrated above, this claim is incorrect: there is no general condition of bond that puts a pre-trial defendant on constructive notice that he might be drug tested. Mr. Wilson could have memorized every page of the Code of Criminal Procedure, the Rules for Louisiana District Courts, and the local rules for the 22nd Judicial District Court, but he would not find anything to advise him that he might be drug tested as a condition of his bond. Nor is there any formal notice of which substances he could be drug tested for even under the court's interpretation of article 320(D) because, as argued above, 320(D) considered as a freestanding provision of law does not designate any substances to be tested for. Moreover, the district court's execution of its own interpretation of article 320(D) deviated arbitrarily from the mandatory language of the article. Altogether, this paints a picture of arbitrary action and enforcement resulting in Mr. Wilson's incarceration without bond.

The court's drug test policy also violated Mr. Wilson's due process right to basic fairness because there are no procedures in place to implement that policy fairly or reliably. Mr. Wilson's bond was revoked because a person who did not testify in court, signed a paper that he or she observed indications of a positive result on a rapid-result dip panel test that the manufacturer advises is only presumptive and should be confirmed, that does not meet the standards for federal workplace drug testing, and that likely does not even meet the standards for drug court drug testing



since there appears to be no opportunity to confirm the presumptive result of the dip test. At the

very least, the court's implementation of its policy based on article 320(D) is not consistent with

basic guidelines for pretrial drug testing programs, where an important consideration is "whether

and when test subjects are given an opportunity to explain positive results."

> Subjects should, at the least, be given an opportunity to challenge the evidence at
> the release hearing; questions about use of legal prescription and non-prescription
> drugs and other facts that may cause a false positive result should come before the
> test is performed. Scrupulous procedures must be developed and followed to
> maintain the confidentiality of the information obtained in response to pretest
> questioning and in test results."

Cathryn Jo Rosen, John S. Goldkamp, *The Constitutionality of Drug Testing at the Bail Stage*, 80

J. Crim. L. & Criminology 114, 169 (1989-1990).

Counsel requested proof of the reliability of the drug tests used by the court,[11] but the court

only offered its assurance that they were authorized by law, without being able to specify the

authorizing rules or any standards for reliability. App. at 41-42. The court refused to offer evidence

pertaining to the reliability of the test prior to or at even contemporaneously with the hearing to

revoke Mr. Wilson's bond, stating:

> That is all public record. You can request it in the proper methods. I'm not going
> to introduce the evidence. That's not my position to do it. If you want to investigate
> that, you can certainly feel free to do so. I'm introducing the results and the actual
> physical test into the record. What you want to do with them, certainly, I'll allow
> you to do with those within the operation of law. But no. I'm not going to go and
> investigate and do everything for you. If you want to investigate that, please feel
> free to do so.

App. at 73.

Of course no court typically is obligated to put forward evidence in support of its orders;

but here the court had instituted an adversary proceeding on its own motion without formal notice

of a hearing or the opportunity to investigate and call witnesses. The court also interpreted the

results of the test, evaluated the merits of prescriptions submitted,[12] and ultimately imposed the

punishment based on the positive presumptive test. App. at 65. Of course there were also no written

rules or applicable laws for counsel to consult in preparation for this proceeding considering the

---

[11] Counsel stated: "None of [the chain of custody or testing procedure evidence] has been made available to me,
Judge. And so, I don't know how reliable the tests are that are supposed to be used today. I don't know what the
chain of custody is for, after the test is taken, for bringing it back up to the Court. And I don't think there are
procedures in place for that. And that's why, again, it violates due process, and also just is contrary to the statute."
App. at 48.

[12] "So I do accept those [prescriptions] for the amphetamines and the buprenorphines, and don't revoke his bail
because eof those two. However, the other three certainly, I don't think he has a prescription, unless you can
produce those, for the methamphetamine, the marijuana, or the oxys." App. at 72.

sole putative authority for the drug test and revocation of bond was the court's interpretation of article 320(D).

The pre-trial drug testing programs authorized by article 320(E), by contrast, mandates certain procedures to ensure at least a minimum of due process, including "reasonable testing procedures to ensure the fair administration of the test and protection for the chain of custody for any evidence obtained." 320(E)(4). Obviously, there were no "reasonable testing procedures to ensure fair administration" of the Reditest that the district court used to remand Mr. Wilson without bond; yet, the court deflected this argument by staking its authority to drug test on subsection (D) in order to avoid the plain language requirements of (E)(3)-(4). App. at 48. But the fact that 320(D) does not contain any procedural protections only strengthens the conclusion that 320(D) does not authorize a court to drug test defendants in court on a trial setting and revoke bond as a consequence of a positive test. It would be irrational for the legislature to include procedural protections for the pretrial drug testing program and not for an authorization that might result in a defendant being held without bond.

Therefore, because Mr. Wilson had no notice that he might be drug tested as a condition of bond, because the court acted with unfettered, arbitrary discretion and in the absence of any guidelines or procedures, because the test itself was evidently not more than "presumptively" reliable and not confirmable, and because the court refused to offer any evidence of the reliability of the test, the order remanding Mr. Wilson to jail without bond violated his fundamental right to due process. This Court should reinstate Mr. Wilson's bond or order that he be released without the requirement of posting bond.

> b. The district court's drug test policy violated Mr. Wilson's right to privacy and to be free from unreasonable search and seizure because it subjected him to the humiliation of public seizure for an observed drug test without any individualized suspicion of criminal wrongdoing.

The court's interpretation of article 320(D) also violated Mr. Wilson's right to be free from unreasonable search and seizure, and his right to privacy. The Fourth Amendment protects individuals from government intrusions into reasonable expectations of privacy. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Drug tests constitute a "search" for Fourth Amendment purposes. *Skinner v. Ry. LaborExecutives' Ass'n*, 489 U.S. 602, 616-17 (1989) (holding that although urinalysis does not entail an intrusion into the body, it is nevertheless a search under the Fourth Amendment because it "can reveal a host of private medical facts" and

therefore is an intrusion upon a person's reasonable expectation of privacy).  It is undeniable that "[r]equiring an individual to urinate on demand and to produce urine for scientific examination is degrading and humiliating." Cathryn Jo Rosen, John S. Goldkamp, *The Constitutionality of Drug Testing at the Bail Stage*, 80 J. Crim. L. & Criminology 114, 161 (1989-1990).

The United States Supreme Court has never ruled whether warrantless pretrial drug testing programs, such as the type authorized by 320(E), are reasonable.[13]  However, Mr. Wilson's petition <u>does not raise</u> this thorny issue since Mr. Wilson was never ordered to participate in a pretrial drug testing program; he was ordered to submit to a drug test without any notice on January 13 solely because he was charged with a UCDSL violation, he was on the trial docket, and he had not accepted the State's offer. It appears that no court has ever considered the legality of such a drug testing regime, let alone upheld such in the face of the Fourth Amendment and analogous State constitutional provisions.  Here, the district court is invoking an absolute authority to subject pretrial defendants charged with UCDSL violations to a particularly humiliating and public Fourth Amendment search without any individualized suspicion, months after they have posted bond, without regard to the express conditions of their bond, and only if they choose not to accept the State's plea offer.

Clearly no fourth amendment rationales could possibly justify the district court's policy here. For example, Mr. Wilson was drug tested after he had been at liberty for seven months, and thus the lesser expectation of privacy applicable to detainees is not relevant. *Compare Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979) ("preserving internal order and discipline are essential goals that may require limitation or retraction of retained constitutional rights of both convicted prisoners and pretrial detainees."). Nor can the search here be classified as an administrative or special needs search on account of the direct criminal consequence (remand without bond) of the search and seizure. *See Ferguson v. City of Charleston*, 532 U.S. 67 (2001) (invalidating a state hospital's practice of testing pregnant women for cocaine and providing the results to the police, finding that the special need was not divorced from the State's general interest in law enforcement.) Moreover, even such searches typically involve at least "reasonable grounds for suspecting that a search will reveal evidence of a violation of law." *New Jersey v. T.L.O.*, 469 U.S. 325, 339-40 (1985);

---

[13] No federal Court of Appeal had weighed in on the issue either until the Ninth Circuit held in 2006 that a pretrial defendant's written consent to drug testing as a condition of his release on bond did not permit the police to subject him to a drug test without probable cause. *United States v. Scott*, 450 F.3d 863, 865 (9th Cir. 2006).

*O'Connor v. Ortega*, 480 U.S. 709 (1987). Here there was no suspicion whatsoever, no disruptive conduct in court, no visible sign of intoxication. App. at 73. In Louisiana even probationers cannot be subjected to searches unless their probation officer has at least "reasonable suspicion to believe that the person who is on probation is engaged in or has been engaged in criminal activity." La. C.Cr.P. art. 895(13)(a). And only those individuals convicted of a UCDSL can be drug tested *if* the court adds that special condition of probation. La. C.Cr.P. art. 895(C)(1). Surely, a pre-trial defendant who has not been convicted and does not have any special conditions on his bond enjoys at least as great a privacy interest as a probationer.

The reason why pretrial drug testing programs present a thornier constitutional analysis is because of the standard legal protections baked into the pretrial drug testing model program; those same protections that the court here flouted by locating its authority under 320(D) rather than 320(E). 320(E)(3) mandates that if a district chooses to implement a pretrial drug testing program it must restrict "the use of any and all test results to ensure that they are used only for the benefit of the court to determine appropriate conditions of release, monitoring compliance with court orders, and assisting in determining appropriate sentences." Furthermore, "A form statement shall be signed by the law enforcement agency and the person in custody stipulating that <u>under no circumstances shall the information be used as evidence or as the basis for additional charges.</u>" La. C.Cr.P. art. 320(E)(3). Such provisions are intended to place pretrial drug testing program in the administrative search realm by preemptively removing possible criminal consequences of the search. The court here took no such precautions and its seizure and search of Mr. Wilson presents a straightforward application of the Fourth Amendment and related State law.

Louisiana case law, likewise, does not contain any cases addressing a policy like the one implemented here; there are no cases cited under 320, or former article 336 except *State v. Dykes*, 96-2814 (La. 05/01/97), 692 So. 2d 1061, where four justices of this Court denied a writ from an unpublished First Circuit decision. A one-paragraph dissent by Chief Justice Calogero, joined by Justice Johnson, indicates that the issue presented by that application related to drug testing as a condition of bond but that the defendant had already been convicted and perhaps had not timely sought review in the appellate court. The dissent in full states:

> I do not think the collateral bar doctrine should be invoked in this case. The writ filing does not include a copy of the Order granting time for seeking relief in the court of appeal, but it is evident that, at the least, the judge was fully aware that the defendant was going to seek review in the court of appeal, for the judge delayed

*13*

sentencing pending review. Therefore, procedurally, this case is ripe for disposition.

The legal issue is an important one that warrants our attention.

A search made in the absence of individualized suspicion, as in this case, may be constitutionally reasonable only when privacy interests are minimal and where furtherance of an important governmental interest would otherwise be jeopardized. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 624 (1989). The governmental interest enunciated in article 336 is for the court to make use of the results in determining "appropriate conditions of release, monitoring compliance with court orders, and assisting in determining appropriate sentences." C.Cr.P. art. 336(B)(3). In balancing this interest with drug testing in a non-custodial environment where there may be an expectation of privacy, the search pursuant to article 336 may or may not violate the Fourth Amendment. I would grant the writ in order to examine Relator's contention that his rights under the Fourth Amendment have been violated.

*State v. Dykes*, 96-2814 (La. 05/01/97), 692 So. 2d 1061 (Calogero, C.J., dissenting). There are no cases citing this writ denial.

Again, this Court need not reach any constitutional decision in Mr. Wilson's case, but it is nevertheless clear that the district court's drug screen policy violated his rights to privacy and to be free from unreasonable search and seizure. For these reasons, this Court should reinstate his bond or order that he be released without the requirement of posting bond.

<u>**CONCLUSION**</u>

Mr. Wilson has been incarcerated without bond since January 13 solely because the district court erroneously interpreted article 320(D) to authorize drug testing every pre-trial defendant on a trial docket charged with a UCDSL violation, without regard to the express conditions of their bond, and remanding anyone who tested positive without bond unless he or she accepted the state's plea offer. Clearly, article 320(D) does not authorize this and the court's interpretation is unreasonable. The best reading of article 320(D) is that it authorizes drug testing people arrested for UCDSL violations and crimes of violence, which is how the same language functioned in former article 336(A) before legislative redesignation in 2016 created ambiguities. Therefore, under the rule of lenity, even setting aside the unreasonableness of the district court's interpretation of 320(D), the ambiguities must be resolved in favor of the defendant's at least equally reasonable interpretation. This case is resolvable by straightforward, plain meaning statutory interpretation and this Court should order that Mr. Wilson's bond be reinstated or that he be released without the necessity of posting bond.

Should this Court wish to reach the serious constitutional questions raised by the district court's drug screen policy, this policy clearly violated Mr. Wilson's rights to due process, privacy, and freedom from unreasonable search and seizure. Mr. Wilson had no notice that he might be drug tested as a condition of the bond he paid for seven months prior; the court's drug test policy is not guided by any standards to ensure fairness or accurate results, yet the penalty imposed is a drastic loss of liberty; and the rapid-result drug test actually used in this case is described by its manufacture as merely "presumptive" and requiring confirmation, which does not appear to be possible since the court did not order that the specimen be preserved in the clerk's record. Thus, the court's order violated Mr. Wilson's due process rights.

The order also violated his right to privacy and to freedom from unreasonable search and seizure. The district court has implemented a policy based on its interpretation of article 320(D) whereby pre-trial defendants are subjected to a humiliating, public search without any individualized suspicion and face only the possibility of incarceration without bond as a result of that search. Clearly this violates the Fourth Amendment and analogous State constitutional provisions. The policy is entirely distinct from pre-trial drug testing programs, which may raise thorny constitutional questions but are in no way challenged in Mr. Wilson's case because he was never ordered to complete a pre-trial drug testing program as a condition of his bond. Mr. Wilson's incarceration is clearly unconstitutional by a straightforward application of the Fourth Amendment. Therefore, this Court should order that Mr. Wilson's bond be reinstated or that he be released without the necessity of posting bond.

**PRAYER FOR RELIEF**

Mr. Wilson prays that this Honorable Court find that the district court misinterpreted 320(D), vacate the order revoking bond and order that Mr. Wilson's bond be reinstated or that he be released without the requirement of posting additional security; alternatively, Mr. Wilson prays that this Court find that the district court's application of article 320(D) violated Mr. Wilson's constitutional rights to due process, privacy, or freedom from unreasonable search and seizure, vacate the order revoking bond and order that Mr. Wilson's bond be reinstated or that he be released without the requirement of posting additional security; or that this Court grant any other relief that is considers fitting.

Respectfully submitted by:

_____

**DANIEL GINNETTY #37001**
22nd District Public Defender's Office
402 N. Jefferson Avenue
Covington, LA 70433
(985) 302-3729 phone
(985) 898-0102 fax
*dginnetty@northshoredefenders.org*